# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL JORDAN,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KIRSTJEN NIELSEN, SECRETARY, DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　　　　　　Defendant. | Case No.: 18-CV-1680 W (LL)<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S EX PARTE APPLICATION TO FILE UNDER SEAL [DOC. 24]; AND**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND [DOC. 23]** |

Pending before the Court are: (1) Defendant's ex parte application to file under seal [Doc. 24]; and (2) Defendant's motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). [Doc. 23.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **DENIES** the ex parte application to seal and **GRANTS** the motion to dismiss without leave to amend.

//
//
//

1

## I. BACKGROUND

Plaintiff Earl Jordan brings this Title VII action against Kirstjen Nielsen in her official capacity as Secretary of the Department of Homeland Security ("DHS").

Between 2009 and 2015, Plaintiff worked as an Inspector for Federal Protective Service ("FPS"), a division of DHS. (*FAC* [Doc. 18] ¶ 6.) The FAC alleges that in 2014, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint against FPS, alleging discrimination and harassment on the basis of race. (*Id.* [Doc. 18] ¶ 7.) Previously, the National Protection and Programs Directorate ("NPPD"), a component within DHS, had been investigating allegations that Plaintiff had misused his official position. (*OAS/IAD Investigation Report* [Doc. 25-2, Exh. 1].)[1] The investigation report in question stated, "[i]nvestigation of Inspector Jordan's actions revealed numerous incidents in which he used his position as a federal law enforcement officer to unlawfully seize, detain, and arrest persons without a nexus to his official duties as required by statute and DHS policy." (*Id.* [Doc. 25-2, Exh. 1] 1.)

According to the FAC, these allegations are false, and Plaintiff was "forced out of his position with FPS under circumstances giving rise to a claim for constructive discharge." (*FAC* [Doc. 18] ¶¶ 9, 14.) Plaintiff resigned from his position at FPS during an investigative interview. (*OAS/IAD Investigation Report* [Doc. 25-2, Exh. 1] 1.)

In November of 2015, Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") seeking reinstatement with FPS. (*MSPB Appeal* [Doc. 25-2, Exh. 2].) In February of 2016, Plaintiff and FPS agreed to settle Plaintiff's MSPB appeal. (*Settlement and General Release Agreement* [Doc. 25-2, Exh. 3].) The settlement agreement contained the following language:

---

[1] As Defendant has filed a factual attack on the Court's subject matter jurisdiction, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Plaintiff's evidentiary objections are overruled. (*Pl.'s Objs.* [Doc. 26-1].)

> The Parties agree that nothing in this Agreement precludes or shall be deemed to preclude the Agency from providing full and complete information regarding Appellant, the Resignation or Appellant's employment with the Agency in connection with a duly authorized security clearance or background investigation or an official law enforcement or personnel investigation conducted by the federal government, a state government or a local government.

(*Id.* [Doc. 25-2, Exh. 3] ¶ 1.)

Plaintiff later found employment with Homeland Security Investigations ("HSI"), part of Immigration and Customs Enforcement ("ICE") at DHS. (*FAC* [Doc. 18] ¶ 15.) On April 21, 2016, the Personnel Security Unit ("PSU"), part of the Office of Professional Responsibility ("OPR") at ICE, informed Plaintiff that it was reviewing Plaintiff's file to determine his continued eligibility to access National Security Information. (*Apr. 21, 2016 Letter* [Doc. 25-2, Exh. 4].) The PSU's letter to Plaintiff identified an apparent discrepancy between his response to the SF-86 form submitted to HSI and the results of a review of his security file. (*Id.*) The letter stated:

> Security documents revealed you resigned your position with the National Protection and Programs Directorate (NPPD), Federal Protective Services, on October 15, 2015, while you were under an internal investigation. Security documents indicate you were being interviewed by NPPD investigators when you abruptly ended the interview and immediately resigned. Please provide a detailed explanation of why you failed to cooperate with NPPD investigators and why you [resigned] without providing appropriate notice.

(*Id.*) The letter requested that Plaintiff "provide a detailed explanation" as to why he did not point this out when prompted in the SF-86 form:

> Your SF-86, dated February 22, 2016, asked in Section 13C – Employment Activities, if in the last (7) year[s] have you been either fired; quit after being told you would be fired; left by mutual agreement following charges of allegations of misconduct; or left by mutual agreement following . . . notice of unsatisfactory performance. You answered 'No.' Please provide a detailed explanation of why you failed to disclose on your SF-86, your resignation from NPPD, on October 15, 2015, following allegation[s] of misconduct.

3

(*Id.*)  The letter further relayed several allegations of official misconduct, including seizures without probable cause and without the requisite nexus to federal property—in addition to accounts of justifications for these events that allegedly differed from witness information.  (*Id.* [Doc. 25-2, Exh. 4] 1–2.)  The letter gave Plaintiff ten days to reply. (*Id.* [Doc. 25-2, Exh. 4] 2.)

Plaintiff responded to the April 21, 2016 letter on May 1, 2016.  (*May 1 Response* [Doc. 25-2, Exh. 5] 1.)  The response alleged the existence of "a very corrupt environment" among supervisors at FPS, including "supervisors who poisoned other supervisors[,]" used government vehicles for personal trips, stole money from employees, stole government money, and stole weapons from evidence.  (*Id.*)  Plaintiff alleged that he filed complaints against his supervisors, and that they retaliated by filing false complaints against him.  (*Id.*)

On April 10, 2017, the PSU revoked Plaintiff's security clearance.  (*Apr. 10, 2017 Letter* [Doc. 25-2, Exh. 6].)  The decision found Plaintiff ineligible for employment or retention in any sensitive position that requires access to classified information.  (*Id.*) The PSU gave the following reason for its decision.

> While you were an Inspector with FPS you displayed behavior indicative of questionable judgment, untrustworthiness, unreliability, lack of candor, unwillingness to comply with rules and regulations, or other characteristics indicating that you may not properly safeguard protected information.

(*Id.*)  It discussed the allegations of misconduct at FPS in detail, focusing on the apparent omission from the SF-86 form.  (*Id.*)

Without a security clearance, Plaintiff could not access law enforcement computer systems in order to conduct investigations with his current employer, HSI.  Thus, HSI assigned Plaintiff to administrative duties.  (*Shaw Email* [Doc. 25-2, Exh. 7].)

After the clearance revocation, the OPR investigation continued.  On May 15, 2017, Plaintiff received a notice of proposed indefinite suspension based on the security clearance revocation.  (*May 15 Letter* [Doc. 25-2, Exh. 11].)  However, on June 20, 2017, the Special Agent in Charge of the investigation declined to impose the indefinite

4

suspension, noting that the agency was still reviewing Plaintiff's eligibility to handle sensitive information, and that Plaintiff had not had an opportunity to "properly address the allegations." (*June 20, 2017 Decision* [Doc. 25-2, Exh. 12].)

On November 3, 2017, the PSU reversed the revocation of Plaintiff's security clearance. (*Nov. 3, 2017 Letter* [Doc. 25-2, Exh. 13].) Specifically, the letter stated that the National Protection and Programs Directorate ("NPPD") "investigated the allegations and did not find [Jordan] had engaged in criminal or other misconduct." (*Id.*) The letter noted that Plaintiff's SF-86 form omitted key information and cautioned Plaintiff against omitting information on security forms in the future. (*Id.*)

On November 30, 2017, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint against FPS. (*EEO Compl.* [Doc. 25-2, Exh. 14].) He filed this action on July 24, 2018. (*Compl.* [Doc. 1].)

On September 24, 2018, Defendant moved to dismiss for lack of jurisdiction and failure to state a claim. (*Def.'s First MTD* [Doc. 5].) The Court granted that motion on the basis of Rule 12(b)(6), noting that the initial Complaint contained virtually no factual allegations. (*Dec. 7, 2018 Order* [Doc. 17].)

Plaintiff filed the FAC on December 21, 2018. (*FAC* [Doc. 18].) Defendant moved to dismiss for lack of jurisdiction and failure to state a claim on February 22, 2019. (*Def.'s MTD* [Doc. 25].) Along with the motion, it applied ex parte to seal the motion to dismiss, and large portions of the evidence filed alongside it. (*Ex Parte App.* [Doc. 24].) In the alternative, Defendant requested the Court's leave to file the documents in question in the public record, notwithstanding the Privacy Act, 5 U.S.C. § 552a, *et seq.*, which prohibits disclosure of a record about an individual from a system of records absent that individual's written consent or a court order. (*Id.*)

//
//
//
//

## II. LEGAL STANDARDS

### A. Ex Parte Application to Seal

Federal law creates a strong presumption in favor of public access to court records, but this right of access is not absolute. San Jose Mercury News, Inc. v. U.S. Dist. Court–N. Dist. (San Jose), 187 F.3d 1096, 1102 (9th Cir. 1999). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." Hagestad v. Tragesser, 49 F.3d 1430, 1433–34 (9th Cir. 1995) (quoting Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978)). District courts therefore have authority to seal and unseal court records, a power that derives from their inherent supervisory power. See id.

Whenever a district court is asked to seal court records in a civil case, the presumption in favor of access can be overcome by a showing of "sufficiently important countervailing interests." San Jose Mercury News, 187 F.3d at 1102. The factors relevant to determining whether this presumption has been overcome include the " 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.' " Hagestad, 49 F.3d at 1434 (quoting EEOC v. Erection Co., Inc., 900 F.2d 168, 170 (9th Cir. 1990)). "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." Id. (citing Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nevada, 798 F.2d 1289, 1295 (9th Cir. 1986)).

The common law right of access extends to pretrial documents produced in civil cases, including documents filed in connection with summary judgment motions. San Jose Mercury News, 187 F.3d at 1102. Thus, unless the court issues an order to the contrary, the fruits of pretrial discovery are presumptively public. Id. at 1103. Even when a protective order purportedly requires sealing of court documents, the district court

6

18-CV-1680 W (LL)

must still exercise rigorous scrutiny before it forecloses public access. See id. at 1103; see also Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir. 1988).

As a natural consequence of the public's right of access to records in civil cases, the presumption of public access cannot be overcome by a mere stipulation of the parties. As Judge Posner recognized, the district judge must scrutinize any request to seal court documents and "may not rubber stamp a stipulation to seal the record." Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999); accord City of Hartford v. Chase, 942 F.2d 130, 136 (1st Cir. 1991) ("[T]he trial court—not the parties themselves—should scrutinize every such agreement involving the sealing of court papers and what, if any, of them are to be sealed . . . .").

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Court must dismiss a cause of action for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "The party asserting federal subject matter jurisdiction bears the burden of proving its existence." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010) (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." Lujan v. Defs. of Wildlife, 504 U.S. 555, 559 (1992). This limitation forms "the core component of standing[,]" a doctrine that ensures federal courts decide only those cases "that are of the justiciable sort referred to in Article III[,]" those that are " 'appropriately resolved through the judicial process[.]' " Id. at 560 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

Upon a 12(b)(1) motion facially attacking subject matter jurisdiction, the Court assumes true all allegations of fact in the Complaint and draws all reasonable inferences in the plaintiff's favor. See Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)); see also City of Los Angeles v. Wells Fargo & Co., 22 F. Supp. 3d 1047, 1052 (C.D. Cal. 2014). "In a facial

7

attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Meyer, 373 F.3d at 1039. "If the moving party converts 'the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.' " Wolfe, 392 F.3d at 362 (quoting Meyer, 373 F.3d at 1039).

## III. DISCUSSION

### A. Ex Parte Application to Seal

Defendant's ex parte application to seal the motion to dismiss and corresponding exhibits is based solely on the premise that "[t]he Privacy Act prohibits the disclosure of a record about an individual from a system of records, absent the written consent of the individual or a Court order." (*Ex Parte App.* [Doc. 24].) It seeks to comply with the Privacy Act by sealing the documents in question and then having the Court decide a jurisdictional challenge based on a heavily redacted motion and sealed evidence. (*Id.*) It offers no further argument as to why the documents should be kept from public eye, besides that "the information and records are arguably subject to the privacy protections of the Privacy Act." (*Id.* [Doc. 24] 2.) That is not sufficient.

As Defendant points out in the ex parte application, "Plaintiff has placed his employment at issue in this litigation, including the conduct of [FPS] . . . as it relates to [HSI's] security clearance decision referenced above." (*Ex Parte App.* [Doc. 24].) Defendant moves in the alternative to file the documents publicly. (*Id.*) Upon an order to show cause, Plaintiff and Defendant have both filed responses indicating that neither

8

objects to the public filing of the documents in question. (*Order to Show Cause* [Doc. 28]; *Pl.'s Response* [Doc. 29]; *Def.'s Response* [Doc. 30].)

As there are no "sufficiently important countervailing interests" evident to overcome the presumption in favor of access to the information and documents at the very core of Defendant's motion, San Jose Mercury News, 187 F.3d at 1102, the application to seal will be denied. [Doc. 24.] The lodged documents will be ordered filed publicly. [Doc. 25.]

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant contends that the Court lacks jurisdiction over this case because it is based on a security clearance investigation and a subsequent revocation. (*Def.'s MTD* [Doc. 25] 1–14.) Defendant is correct.

"[S]ecurity clearance determinations are 'sensitive and inherently discretionary' exercises, entrusted by law to the Executive." Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 196 (9th Cir. 1995) (quoting Dept. of the Navy v. Egan, 484 U.S. 518, 527–29 (1988)). The Court lacks jurisdiction to review security clearance decisions made by the Executive or his delegee. See id. at 195–96. "That bar to review applies equally . . . in the context of a Title VII discrimination action." Id. "[S]ecurity clearance decisions are highly uncertain, and heavily dependent on the ability of the decision-maker to predict the future behavior of the applicant. Thus the [U.S. Supreme] Court elected to leave the '[p]redictive judgment of this kind' to 'those with the necessary expertise in protecting [the sensitive material],' rather than in the hands of 'an outside nonexpert body.' " Id. (quoting Egan, 484 U.S. at 529).

The basis for the Title VII retaliation and harassment claims in the FAC is that FPS shared information with HSI as part of a security clearance investigation, and that HSI temporarily revoked Defendant's security clearance based on the information shared

9

during the investigation.[2] (*Id.* [Doc. 25] 1–14; *FAC* [Doc. 18] ¶¶ 23–35.) Accordingly, this case requires delving into the circumstances surrounding the submission of an investigatory report by one DHS agency to another as part of a clearance review—specifically so as to determine whether such information-sharing constituted Title VII retaliation or harassment. Judicial review of the investigatory review process surrounding a security clearance decision is fundamentally no different from judicial review of the clearance decision itself. Such outside interference into inter-agency information-sharing as part of a clearance review runs counter to Supreme Court precedent and would pose a threat to national security decision-making. See Brazil, 66 F.3d at 196; Egan, 484 U.S. at 527–29.

The Court has no jurisdiction over this case. Defendant's motion to dismiss will be granted without leave to amend.

//
//
//
//
//
//
//
//
//
//
//

---

[2] Defendant's evidence makes it very clear that the FAC is grounded in information-sharing as part of a security clearance review, which resulted in a temporary suspension. Plaintiff does not show otherwise in opposition. Rather, he submits that the Court may not infer that his claims are based on a security clearance review because the Court may not consider extrinsic evidence as part of a factual attack on jurisdiction. (*See Pl.'s Opp'n* [Doc. 26] 4–5.) This is not a correct assessment of the law. See Meyer, 373 F.3d at 1039.

## IV. CONCLUSION & ORDER

Defendant's ex parte application to file under seal is **DENIED**. [Doc. 24.] The lodged documents are ordered filed publicly. [Doc. 25.]

Defendant's motion to dismiss for lack of jurisdiction is **GRANTED**. [Doc. 23.] This action is dismissed **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: May 22, 2019

Hon. Thomas J. Whelan
United States District Judge